UNTITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DONALD J. SILMON AND MARY SILMON,         **TRIAL BRIEF**
DERIVATIVELY; AND         **WITNESS LIST**
JEFFERY E. CAMPBELL, II AND         **EXHIBIT LIST**
ANNETTE PARKER, DERIVATIVELY,         **PROPOSED VOIR DIRE**
        CASE NO.: 10-CV-0274

vs.

CITY OF BUFFALO, NEW YORK,
CITY OF BUFFALO POLICE DEPARTMENT,
GREGORY KWIATKOWSKI,
JOSEPH WENDEL, RAYMOND KRUG, AND
"POLICE OFFICER DOE(S)"
_____

## TRIAL BRIEF

Plaintiffs Donald J. Silmon and Jeffery E. Campell, II were lawfully stopped and it was legal to arrest them on the date and time of this incident. Plaintiff stipulates that they are not bringing charges for false arrest nor are they bringing charges for malicious prosecution.

Plaintiffs do allege that the defendants subjected the plaintiffs to battery, assault, negligence, gross negligence, willfull misconduct, recklessness and/or excessive force. Plaintiffs Mary Silmon and Annette Parker have a derivative claim on behalf of their sons.

### Summary of Facts

Donald Silmon and Jeffrey Campbell were both minors on May 30, 2009 and May 31, 2009 when this incident occurred. While Mr. Silmon was driving his vehicle, Mr. Campbell foolishly shot his BB gun into a crowd of people. Both boys were prosecuted for this offense, received youthful offender status and were sentenced. They

were arrested later on when they went home that night. They acknowledged that they did something very foolish and stupid and they received just punishment for it. The plaintiffs make no excuses for their conduct and do not complain for being arrested and prosecuted, however, they do have very legitimate claims for the excessive force used when they were arrested.

(The plaintiffs' response to question 15 of their Answer to Defendant's First Set of Interrogatories attached as Exhibit C provides a detailed account of what happened next.)

In a nutshell, Officer Gregory Kwiatkowski and his associates used excessive force on the plaintiffs during their arrest. Officer Kwiatkowski repeatedly slammed Mr. Silmon's head on the hood of his vehicle without provocation and while he was in complete compliance with all police requests. Officer Kwiatkowski asked Mr. Silmon, "You like shooting at white kids?" To which Mr. Silmon responded, "I am white myself. Why would I like shooting at white kids?" Officer Kwiatkowski then slammed Mr. Silmon's head on the car. (Mr. Silmon is Caucasian on his mother's side)

Later on, Officer Krug came to the back seat of Mr. Silmon's vehicle and showed him the BB gun that they used earlier. The officer asked Mr. Silmon if it was his BB gun to which he replied it was. The officer then spontaneously and unprovoked, pointed the gun at Mr. Silmon's leg and shot him first in the right calf. He and the other police officer standing there began laughing because they thought it was funny. While Officer Krug was doing the shooting, it was Officer Wendel that was laughing. It was Officer Wendel who said laughingly, "Shoot him in the balls." Officer Krug responded by pointing the BB gun directly at Mr. Silmon's genitals and shot at him. Mr. Silmon moved

at the last second and he was shot in the thigh near his genitals.  If Mr. Silmon did not squirm, he definitely would have been shot in the genitals.

As the plaintiffs were being driven home in different police cars, Officer Wendel said to Officer Krug, "These guys think they're tough guys."  Officer Krug responded, "Well, we will see how tough they are."  Yet, at no time has it ever been alleged that the plaintiffs did or said anything improper or disrespectful to the officers.

When Mr. Silmon was brought to the police station, he was then taken in through a back entrance and was repeatedly punched in the stomach while he was being questioned.

Jeffrey Campbell was also assaulted by Officer Kwiatkowski at the scene.  Again, please refer to Exhibit C, Paragraph 15.

Officer Kwiatkowski, again unprovoked, pushed Mr. Campbell's face into the trunk of the police car.  When Mr. Campbell looked at the officer to see who had did that, Officer Kwiatkowski punched him in his right eye with his fist.  It should be noted that Jeffrey Campbell was handcuffed behind his back at this time.  Once back at the station, Officer Kwaitkowski again slammed Mr. Campbell against the wall for no reason at all other than the officer getting some personal satisfaction.  He then struck Mr. Campbell in the face and hit him in the right eye, grazing him at first, while asking him, "Do you like shooting at white people?"  When Mr. Campbell said no, the officer then hit him in the eye again with a backhand much harder. (Mr. Campbell is black.)

<u>Injuries</u>

Jeffrey Campbell sustained injuries to his head, face, neck and in particular, his eye, in the form of bruises and contusions, swelling of his eye, blurry vision, seeing spots,

problems with vision for a period of time as well as emotional injuries of fear and distrust of police officers due to this incident.

Donald Silmon sustained injury to his calf and leg when he was shot twice by the police officer. The BB pellet remains inside his leg to this day and has to be surgically removed. Mr. Silmon's doctors were initially waiting for the BB to rise to the surface, which it has, and you will be able to feel it in the plaintiff's leg. Mr. Silmon was also choked, slammed in the head and sustained bruises and contusions, headaches, dizziness, bloody lip, pain and suffering to his head jaw and mouth area as well as pain and discomfort in his leg and groin area. These incidents have understandably made him fearful and distrusting of police officers as well.

Both minors' parents have derivative claims for monies they expended for medical expenses on behalf of their son as well as emotional injuries due to the police officers' abuse of their children. It should be noted that Mr. Campbell's mother is a Buffalo police officer and she even made inquiry the night this happen.

## Liability and Damages

Obviously, as indicated, the plaintiffs have no excuse for their own conduct of shooting a BB gun into a crowd. They were minors and thought it was funny prank, however, they realize they were wrong and they paid for it with this arrest and a youthful offender disposition and sentencing. However, arrestees also have certain rights that protect them from excessive force and unconstitutional violations. These rights protect even people committing crimes. Can you imagine that it was amusement to these officers to shoot this gun at these young minors? Never was there any accusation that these

young men resisted arrest or were disrespectful in any way.  In fact, it was just the opposite.  These young boys were scared and remorseful for they did.

Nevertheless, these officers made this a racial issue and shot the plaintiff two times for their amusement.  Mr. Silmon will have to have surgery to remove the pellet left from this.  In addition, they were also beat up and sustained head injuries, bruises, and a bloody lip that was, again, completely unprovoked and uncalled for.  These officers took it upon themselves to inflict their own justice and own sentencing on these young men.

While Mr. Campbell did have some vision problems for some time, they have resolved and his injuries have resolved.  Mr. Silmon's bruising and other injuries have resolved, however, the discomfort of the BB in his leg and the need for future surgery has obviously not been resolved.  There will be discomfort from the surgical procedure and thereafter, as well as expenses involved.

Therefore, on behalf of the plaintiffs, I respectfully request an award of $45,000.00 to Mr. Campbell and an award of $325,000.00 to Mr. Silmon who was shot twice and needs surgery.

This conduct is absolutely uncalled for and quite frankly, it shocks the conscience. I know of some officers that try to give young men "religion" to try to teach them a lesson. However, shooting an individual for amusement is one of the most egregious and unconscionable acts a police officer can display.   These men should not be police officers and I would respectfully request punitive damages in the amount of $150,000.00 to ensure nothing like this will ever happen again.

<u>Depositions</u>

It is not anticipated that deposition testimony will be offered in directly, however, it depends on the testimony of the witness at trial as to whether they will need to be cross-examined or impeached with their prior deposition statements and statements to the Professional Conduct Committee of the Buffalo Police Department.

## WITNESS LIST

Plaintiffs anticipate all the parties including plaintiffs and defendants will testify in this matter. In addition, the plaintiffs' mothers who are also plaintiffs are also expected to testify regarding their observations when they picked up their sons on the dates in question as well as prior to that, as well as their observations of their sons' physical conditions before and after the incident. Also, there were phone calls made which information was provided to the defense and the witnesses will testify regarding this as well.

Plaintiffs may also call Dauvaugh Danzler and Justin Ward who observed the assaults as they occurred and the witnesses testifed at depositions of their observations.

Although they have not been retained as medical experts at this time, the plaintiffs expect to call their treating physicians both at the emergency room and treating doctor. The defense has been provided with these medical records.

These witnesses are expected to testify in the course of their medical expertise as well as identifying the statements that the plaintiffs' made to them regarding the incident and the injuries which resulted and the fact that the plaintiff

Donald Silmon was shot with a BB Gun and the BB penetrated his body and remains in his body still.  X-Rays may be used as well.  The doctors will also testify as to the cost of the medical treatment as well as the cost future surgery to remove the BB that remains in plaintiff Donald Silmon and any other related medical costs and treatment.  These witnesses will also testify that the injuries, bruises, swelling, soft tissue injuries as well as the BB Gun injuries were in a manner consistent with being hit and struck as the plaintiffs' claim and being shot as the plaintiffs' claim.

## **EXHIBIT LIST**

It is the belief of the Plaintiffs that all exhibits will be deemed non-contested as they have already been provided to the defense.

EXHIBIT 1:   Emergency Medical Records of Jeffery Campbell, II

EXHIBIT 2:   Emergency Medical Records of Donald Silmon

EXHIBIT 3:   Medical Records from Buffalo General Hospital Eye Clinic of Jeffery Campbell, II

EXHIBIT 4:   Medical Records from Medical First of Jeffery Campbell, II

EXHIBIT 5:   Medical Records from Dr. Giocobbe of Donald Silmon

EXHIBIT 6:   Medical Records from Women and Children's Hospital on Donald Silmon

EXHIBIT 7:   Medical Records from ECMC Surgical on Donald Silmon

EXHIBIT 8:   Defendant Wendel's Statements to the Professional Conduct Committee

EXHIBIT 9:   Defendant Kwiatkowski's Statements to the Professional Conduct Committee

EXHIBIT 10:  Defendant Krug's Statements to the Professional Conduct Committee

EXHIBIT 11:   Photographs of Injuries of Donald Silmon

EXHIBIT 12:   Photographs of Injuries of Donald Silmon

EXHIBIT 13:   Photographs of Injuries of Donald Silmon

EXHIBIT 14:   Photographs of Injuries of Jeffrey Campbell

EXHIBIT 15:   Mugshot of Donald Silmon

EXHIBIT 16:   Mugshot of Jeffery Campbell

EXHIBIT 17:   Arrest/Booking Report on Jeffery Campbell

EXHIBIT 18:   Arrest/Booking Report on Donald Silmon

EXHIBIT 19:   Cheektowaga Police Department Complaint Report

EXHIBIT 20:   Felony Complaint by Police Office Krug on Jeffery Campbell

EXHIBIT 21:   Case History from Central Booking dated 5/31/09

EXHIBIT 22:   710.30 Statement of the Plaintiffs

EXHIBIT 23:   Arrest Data Form of Jeffrey Campbell

EXHIBIT 24:   Arrest Data Form of Donald Silmon

EXHIBIT 25:   NYSPIN Record of No Record Check on Jeffery Campbell

EXHIBIT 26:   NYSPIN Record of No Record Check on Donald Silmon

EXHIBIT 27:   Buffalo Police Complaint Summary Report dated 6/23/09

EXHIBIT 28:   Two-Page City of Buffalo Police Department Report on Complaint 09-1510006 dated 5/31/09

EXHIBIT 29:   Police Booking Form on Donald Silmon

EXHIBIT 30:   Felony Complaint by Officer Krug on Donald Silmon

EXHIBIT 31:   710.30 Notice on Donald Silmon

EXHIBIT 32:   Possibly Pertinent 911 Tapes

I agree with defendant's submission that plaintiffs' claims of battery, assault, negligence, gross negligence, willful misconduct and recklessness are deemed to be litigated as stated as New York causes of action.  Plaintiffs are all also allegeding violation of 42 U.S.C. Section 1983 which will be deemed litigated as a Federal cause of action.  Plaintiffs Mary Silmon and Annette Parker and their claims of loss of support and services of their respective sons are asserting New York State causes of Action.

I respectfully disagree that there are no exceptional evidentiary issues.  I am submitting a motion in limine to move to preclude the defendants from bringing up the issues of the underlying actions that comprised the arrests of the plaintiff since we are not making allegations for false arrest or malicious prosecution, those items are completely irrelevant to the causes of assault, battery and excessive force.  Indeed if this were a false arrest or malicious prosecution case then those items would be material and relevant.  Therefore, this matter needs to be addressed in the motion in limine.

## PROPOSED VOIR DIRE

The Plaintiffs do not have any proposed voir dire questions for the jurors at this time, however, that may vary depending on the motion in limine ruling.

Dated: Buffalo, New York
     April 1, 2013

Respectfully submitted,
**ROLAND M. CERCONE, PLLC.**

/s/   Roland M. Cercone
_____
ROLAND M. CERCONE, Esq.
Attorneys for Plaintiff
484 Delaware Avenue
Buffalo, New York 14202
(716) 883-3300
Email:  cerconelaw@hotmail.com

TO: Carmen J. Gentile, Esq.
City of Buffalo Corporation Counsel
Attorney for Defendants
65 Niagara Square, Room 1100
Buffalo, NY 14202
Email: cgentile@city-buffalo.com

UNTITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DONALD J. SILMON AND MARY SILMON, **CERTIFICATE OF**
DERIVATIVELY; AND **SERVICE**
JEFFERY E. CAMPBELL, II AND
ANNETTE PARKER, DERIVATIVELY, CASE NO.: 10-CV-0274

vs.

CITY OF BUFFALO, NEW YORK,
CITY OF BUFFALO POLICE DEPARTMENT,
GREGORY KWIATKOWSKI,
JOSEPH WENDEL, RAYMOND KRUG, AND
"POLICE OFFICER DOE(S)"

_____

  I, Tiffany L. Manning, hereby filed the foregoing TRIAL BRIEF, WITNESS LIST, EXHIBIT LIST and PROPOSED VOIR DIRE today with the Clerk of the District Court using its CM/ECF system, which would electronically notify the following CM/ECF participant(s) on this case:

  Addressee(s):

  Carmen J. Gentile, Esq.
  City of Buffalo Corporation Counsel
  Email: cgentile@city-buffalo.com


  I declare under penalty of perjury that the foregoing is true and correct.


Dated: April 1, 2013            **S/Tiffany L. Manning**
                       Tiffany L. Manning